UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BIBA BAJIC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:17 CV 1795 ACL |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Deputy Commissioner of Operations, ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM**

Plaintiff Biba Bajic brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Bajic's severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform past relevant work.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be reversed and remanded for further proceedings.

### I. Procedural History

Bajic filed her application for DIB on September 4, 2013, claiming that she became unable

to work on March 1, 2013, because of post-traumatic stress disorder ("PTSD"), depression, "mental illness," and "sleep and memory problems." (Tr. 133-40, 193.) Bajic was 53 years of age at the time of her alleged onset of disability. Her claims were denied initially. (Tr. 82-86.) Following an administrative hearing, Bajic's claims were denied in a written opinion by an ALJ, dated April 7, 2016. (Tr. 36-41.) Bajic then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on May 17, 2017. (Tr. 1-6.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Bajic first argues that the ALJ's RFC "is conclusory and not supported by the record." (Doc. 20 at p. 7.) She next argues that the ALJ "committed reversible error by failing to proffer the Plaintiff's representative's questions to the vocational expert." *Id.* at 10. Bajic also contends that the ALJ "failed to evaluate the Plaintiff's credibility when discounting her testimony." *Id.* at 11. She finally argues that the ALJ "failed to fully develop the record." *Id.*

## II. The ALJ's Determination

The ALJ first found that Bajic met the insured status requirements of the Social Security Act on March 1, 2013, and remained insured throughout the period of the decision. (Tr. 38.) She found that Bajic did not engage in substantial gainful activity since her alleged onset date of March 1, 2013. *Id.*

In addition, the ALJ concluded that Bajic had the following severe impairments: PTSD and major depressive disorder. *Id.* The ALJ found that Bajic did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. *Id.*

As to Bajic's RFC, the ALJ stated:

> Since March 1, 2013, the claimant has been able to perform work at all exertional levels, perform up to semi-skilled tasks, and have occasional to frequent interaction with the public, co-workers and supervisors, but has [been] unable to perform detailed or complex tasks.

*Id.*

In determining Bajic's RFC, the ALJ assigned "no weight" to the opinions of treating psychiatrist Farida Farzana, M.D.; and licensed clinical psychotherapist Erica Ottolini. (Tr. 39.)

The ALJ further found that Bajic was capable of performing past relevant work as a food service worker. (Tr. 40-41.) The ALJ therefore concluded that Bajic was not under a disability, as defined in the Social Security Act. (Tr. 41.)

The ALJ's final decision reads as follows:

> The claimant's application for a period of disability and disability insurance benefits, protectively filed on August 2, 2013, is denied. She has not been disabled under sections 216(i) and 223(d) of the Social Security Act.

*Id.*

### III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial

evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a

whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**III.B.  Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that

would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental

limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## IV. Discussion

Bajic first argues that the RFC formulated by the ALJ is not supported by any medical evidence. She further argues that, in determining Bajic's RFC, the ALJ erred in assigning no weight to the opinion of Dr. Farzana.

An ALJ determines a claimant's RFC "based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of h[er] limitations." *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). The ALJ "may not simply draw his own inferences about plaintiff's functional ability from medical reports;" instead, the RFC assessment should include a narrative discussion demonstrating how the evidence logically supports the ALJ's conclusions. *Strongson*, 361 F.3d at 1070. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *See Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008) (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)).

The ALJ first discussed Bajic's testimony regarding her limitations. Bajic testified that she has been unable to work due to her mental impairments. (Tr. 39, 52-60.) Specifically, she testified she has crying spells, is fearful about everything, has difficulty remembering things, and has difficulty sleeping. *Id.* Bajic stated that she is unable to leave her home due to her condition and cannot drive alone because she gets lost. *Id.*

The ALJ next discussed Dr. Farzana's treatment notes. (Tr. 39.) She acknowledged that records dated from March 2013 to April 2015 show Bajic complained of anxiety, flashbacks about war, crying spells, insomnia, confusion and/or forgetfulness. *Id.* The ALJ stated that Dr. Farzana's mental status evaluations during this period, however, are "silent about deficits and

abnormalities." *Id.* She noted that treatment notes dated December 2011 to January 2013 showed similar complaints and a GAF score ranging from 37 to 50,[1] yet Bajic was still able to work as a food service worker. *Id.*

On September 17, 2015, Dr. Farzana expressed the opinion that Bajic was unable to work due to her major depressive disorder and PTSD. (Tr. 321.) A week later, licensed clinical psychotherapist Erika Ottolini authored a letter, in which she indicated she supported Bajic's claim for disability. (Tr. 318.)

The ALJ indicated that she was assigning "no weight" to these opinions. (Tr. 39.) She first accurately noted that the issue of disability is reserved for the Commissioner. *Id.* The ALJ also found the opinions were inconsistent with the record as a whole, including their own treatment records and Bajic's activities. *Id.* In support of this determination, the ALJ noted that Bajic's daily activities indicate a "good ability to concentrate, complete tasks and otherwise function," and that Bajic reported to Dr. Farzana that she had been "keeping busy" in February 2015. (Tr. 40.) The ALJ concluded that the record "contains little documentation supporting any significant functional limitations, including mental status examinations or other evidence of functional impairment." *Id.*

"'It is the ALJ's function to resolve conflicts among the various treating and examining

---

[1] GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood;" scores of 41 to 50 represent "serious symptoms" or "any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *See American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders* 34 (Text Revision 4th ed. 2000) ("DSM IV–TR").

physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000). The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785-86 (8th Cir. 1995)). The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011). Whether the ALJ grants the treating physician's opinion substantial or little weight, "[t]he regulations require that the ALJ 'always give good reasons' for the weight afforded to a treating physician's evaluation." *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005). "Failure to provide good reasons for discrediting a treating physician's opinion is a ground for remand." *Anderson v. Barnhart*, 312 F. Supp.2d 1187, 1194 (E.D. Mo. 2004).

The undersigned finds that the ALJ erred in determining Bajic's mental RFC. The only medical evidence in the record regarding Bajic's mental limitations consists of the opinions and records of Dr. Farzana. Dr. Farzana treated Bajic from December 2011 through the date of the ALJ's decision. (Tr. 252-54, 278-99.) At her initial evaluation on December 2011, Bajic reported that she had lost a child during the war in Bosnia.[2] (Tr. 297.) Bajic stated, "I can't sleep at night, the bombing and dreams." *Id.* She reported symptoms of depression, panic, confusion, and lack of energy. *Id.* She indicated that she becomes lost when driving and cannot remember where she parked. *Id.* Bajic cried during her evaluation. *Id.* Upon mental status examination, Dr. Farzana noted Bajic's affect was blunted and flat; her mood was depressed and anxious; her

---

[2]Dr. Farzana's initial treatment notes, dated December 2011 through January 2013, are handwritten and portions are illegible.

speech was perseverating; her thought process was circumstantial; and her concentration, insight and judgment were poor. (Tr. 298-99.) Dr. Farzana diagnosed Bajic with major depression and a GAF score of 37. (Tr. 299.) She prescribed Remeron[3] and Valium.[4] *Id.*

Dr. Farzana saw Bajic for follow-up approximately monthly. On January 5, 2012, Bajic reported feeling nervous and depressed and "cried bitterly thinking of the war in Bosnia." (Tr. 296.) Dr. Farzana diagnosed major depression and PTSD, and increased her dosage of Remeron. *Id.* On February 2, 2012, Bajic was still anxious and tired. (Tr. 295.) She reported she became scared easily. *Id.* On March 8, 2012, Bajic's husband was concerned because Bajic had put a heater under a dish, burning the dish and breaking it into pieces. (Tr. 294.) Bajic continued to feel depressed, helpless, and tearful. *Id.* Dr. Farzana discontinued the Remeron and started Bajic on Lexapro.[5] *Id.* Bajic reported doing "a little better" in April 2012, although she was still anxious, sensitive, and became overwhelmed easily. (Tr. 293.) On June 14, 2012, Bajic reported that she was not sleeping, and complained of nightmares. (Tr. 292.) Dr. Farzana added Zyprexa.[6] *Id.* On September 11, 2012, Bajic reported having a nightmare about the Bosnian war the previous night. (Tr. 291.) She also complained of forgetfulness and losing things. *Id.* Dr. Farzana discontinued the Lexapro and started Pristiq.[7] *Id.* On November 8, 2012, Bajic started crying and said she did not like life here. (Tr. 290.) She reported that she isolates and avoids

---

[3]Remeron is an antidepressant indicated for the treatment of depression. *See* WebMD, http://www.webmd.com/drugs (last visited July 9, 2018).
[4]Valium is a benzodiazepine indicated for the treatment of anxiety. *See* WebMD, http://www.webmd.com/drugs (last visited July 9, 2018).

[5]Lexapro is indicated for the treatment of depression and anxiety. *See* WebMD, http://www.webmd.com/drugs (last visited July 9, 2018).
[6]Zyprexa is an antipsychotic drug indicated for the treatment of conditions such as schizophrenia and bipolar disorder. *See* WebMD, http://www.webmd.com/drugs (last visited July 9, 2018).
[7]Pristiq is indicated for the treatment of depression. *See* WebMD, http://www.webmd.com/drugs (last visited July 9, 2018).

people, and has difficulty sleeping. *Id.* On January 2, 2013, Bajic reported that she was getting very anxious. (Tr. 289.) She kept crying, and indicated she was getting confused and disoriented, and was unable to remember directions to familiar places. *Id.* Bajic was unable to drive, and her husband had to drive her. *Id.* Dr. Farzana suggested that Bajic "apply for social security disability and stop working." *Id.*

On March 7, 2013, six days after her alleged onset date of disability, Bajic's husband reported that Bajic had quit her job because she was getting confused and getting lost on the road. (Tr. 254.) Bajic was "very depressed and kept crying." *Id.* Her husband was "very concerned about her." *Id.* Bajic presented to Dr. Farzana on August 1, 2013, after a trip to Bosnia. (Tr. 253.) She reported she had been taking her medications regularly and had no side effects. *Id.* On October 24, 2013, Bajic's husband reported that Bajic was very forgetful, was not sleeping at night, did not eat regular meals, stayed home most of the time, and was not driving. (Tr. 286.) Bajic stated, "I feel no good I wish I could kill myself I can't take care of myself." *Id.* Bajic cried during her appointment. *Id.* On February 20, 2014, Bajic's husband reported that Bajic was "still very sick and dizzy" following a visit to urgent care for dizziness. (Tr. 285.) Bajic presented on May 14, 2014, with complaints that she was feeling confused and was not sleeping at all despite taking three tabs of Trazodone.[8] (Tr. 284.) Dr. Farzana increased her dosage of Trazodone. *Id.* On July 17, 2014, Bajic saw Dr. Farzana for follow-up, at which time she reported taking her medications regularly. (Tr. 283.) Bajic reported that she had applied for disability, was worried, and did not sleep. (Tr. 282.) On January 14, 2015, Bajic stated "I keep crying and feel sad I can't drive I can't do much of anything." (Tr. 281.) Bajic started to "cry bitterly" during her visit. *Id.* Dr. Farzana increased her dosage of Lexapro. *Id.* On February

---

[8]Trazodone is indicated for the treatment of depression and insomnia. *See* WebMD, http://www.webmd.com/drugs (last visited July 9, 2018).

18, 2015, Bajic indicated that she was moving into another house and "keeps busy." (Tr. 280.) She "kept talking about how her life has been in a state of turmoil since war in Bosnia." *Id.* On April 23, 2015, Bajic's husband reported that Bajic "does not do much of anything and she is very anxious and tense and worried" and kept asking him where he was going. (Tr. 279.) Bajic kept experiencing flashbacks of war, and was "totally dependent" on her husband. *Id.* Dr. Farzana adjusted her medications. *Id.*

Dr. Farzana completed a Mental Residual Functional Capacity Questionnaire on April 20, 2016, in which she expressed the opinion that Bajic was unable to meet competitive standards in all mental abilities and aptitudes needed to perform unskilled work and that she would be absent from work more than four days a month due to her impairments.[9] (Tr. 28-32.)

Dr. Farzana was Bajic's treating psychiatrist and saw Bajic on a regular basis beginning in December 2011. As such, Dr. Farzana was the most qualified source to provide a longitudinal opinion of psychiatric functioning. Dr. Farzana's treatment notes reveal Bajic consistently reported significant symptoms during the relevant period, including depression, anxiety, crying spells, flashbacks of the war, confusion, forgetfulness, difficulty sleeping, inability to drive, and thoughts of suicide. (Tr. 253-54, 279-86.)

The ALJ stated that mental status evaluations performed by Dr. Farzana from March 2013 to April 2015 were "silent about deficits and abnormalities." (Tr. 39.) In the section of her treatment notes titled "mental status exam," Dr. Farzana only listed the categories "suicidal" and "violent/homicidal" and noted "not present" on each visit. (Tr. 279-88.) Although Dr. Farzana's records are not thorough, they nonetheless document many "deficits and abnormalities" as

---

[9]Bajic submitted this evidence, along with recent treatment notes of Dr. Farzana and other providers, to the Appeals Council. (Tr. 2.) The Appeals Council found that it did not affect the ALJ's decision as to whether Bajic was disabled on or before the ALJ's April 7, 2016. *Id.*

discussed above; those deficiencies were set out in the "Subjective" section of her treatment notes. *Id.* The findings noted by Dr. Farzana were not merely Bajic's subjective complaints. Rather, between March 2013 and April 2015, Dr. Farzana consistently noted that Bajic cried during her examinations. *Id.* In addition, Bajic's husband corroborated her complaints and expressed great concern about Bajic's mental health. Previously, Dr. Farzana saw Bajic on eight different occasions between December 22, 2011 and September 21, 2012. By January 2, 2013, Bajic and her husband reported Bajic could no longer driver herself to work so her husband was driving her to work. In response, Dr. Farzana recommended that Bajic apply for disability benefits and quit working. This evidence supports Dr. Farzana's opinion that Bajic's mental impairments resulted in disabling limitations.

In rejecting Dr. Farzana's opinion, the ALJ also stated that Bajic complained of the same symptoms of depression, anxiety, insomnia, and forgetfulness during the period of December 2011 to January 2013, yet she was able to work as a food service worker. (Tr. 39.) Bajic testified at the hearing that she stopped working in March 2013 because she had difficulty with her memory, was not sleeping, was constantly in fear, and did not want to leave her home. (Tr. 61.) This explanation is consistent with Dr. Farzana's records, which noted the reports of Bajic and her husband that Bajic was becoming increasingly confused and disoriented, was unable to remember directions to familiar places, and relied on her husband to drive her. (Tr. 289.) These complaints led Dr. Farzana to recommend that Bajic apply for disability benefits in January 2013. *Id.*

The ALJ erred in assigning no weight to Dr. Farzana's opinion. Significantly, there is no contrary medical evidence in this case. The only other opinion evidence, the letter of psychotherapist Erika Ottolini, expressed support of Dr. Farzana's opinion. (Tr. 318.)

Additionally, medical providers treating Bajic for physical complaints noted her depression (Tr. 245, 247, 308) and anxiety (Tr. 247, 257).

The ALJ also found that Bajic's daily activities were inconsistent with her allegation of disabling mental impairments. The ALJ, citing Bajic's function report, stated that Bajic is able to manage her finances, perform household chores, get along with others, and has been able to drive while accompanied by another. (Tr. 38, 181-91.) An examination of the function report, however, reveals that Bajic reported that she requires her husband's help or accompaniment for all of these activities. (Tr. 183-91.) Bajic also testified at the hearing that she is not able to cook, shop, or otherwise travel without her husband. (Tr. 55.) The ALJ pointed out that Bajic was able to travel to Bosnia in mid-2013. (Tr. 40.) It is true Bajic testified that she traveled to Bosnia to visit family in 2013. (Tr. 57.) She further testified that family members accompanied her during the trip. *Id.* When considered as a whole, Bajic's testimony regarding her daily activities does not constitute a "good reason" for assigning no weight to her treating psychiatrist's opinion.

When determining a plaintiff's RFC, an ALJ must consider "all relevant evidence," but ultimately, the determination of the plaintiff's RFC is a medical question. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). The RFC formulated by the ALJ is not supported by substantial evidence. As previously discussed, the ALJ erred in assigning no weight to treating psychiatrist Dr. Farzana. The ALJ then failed to provide a rationale for the RFC she formulated. In light of the medical evidence and testimony, it is questionable whether Bajic is capable of performing "semi-skilled tasks," with "frequent interaction with the public, co-workers and supervisors."

In assessing Bajic's mental limitations, the ALJ did not give weight to the opinion of any treating or examining physician or seek out any additional medical opinion evidence. Bajic argues that the ALJ erred in failing to further develop the record. At the end of the administrative

hearing, Bajic suggested that the ALJ order a consultative psychological evaluation due to the ALJ's remarks that "there's just not very much here," and "I sort of need you to build up the record a bit for me." (Tr. 63.)

"Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press [her] case." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (quoting *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)). The ALJ is required to consider all evidence in the record and obtain additional information if a crucial issue is underdeveloped. *See Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) (a social security hearing is a non-adversarial proceeding, and the ALJ has a duty to develop the record fully; that duty may include seeking clarification from treating physicians if a crucial issue is undeveloped or underdeveloped); *Conklin v. Astrue*, 360 Fed.Appx. 704, 707 (8th Cir. 2010) (further development of the record was warranted where "the ALJ was arguably on notice of the need to clarify [the claimant's] mental RFC with her treating psychiatrists.").

In this case, to the extent that the record lacked sufficient evidence, the ALJ should have further developed the record by either requesting clarification from Dr. Farzana or obtaining a consultative psychological examination. Instead, the ALJ improperly relied upon on her own inferences about Bajic's mental limitations.

For the reasons discussed above, the ALJ's RFC determination is not based upon substantial evidence on the record as a whole and this matter will be reversed and remanded. Because this issue is dispositive, the Court does not reach Bajic's additional arguments regarding the ALJ's credibility analysis or the vocational expert's testimony. Upon remand, the ALJ shall properly consider the opinion evidence, obtain additional medical evidence regarding Bajic's

mental limitations if necessary, properly assess Bajic's credibility, and formulate a new mental RFC based on the record as a whole.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of September, 2018.